UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|   |   |
|---|---|
| JEAN SHEA BUDROW, | * |
| Plaintiff, | * |
| v. | * Civil Action No. 21-cv-10118-ADB |
| NATIONAL CITY MORTGAGE CO., *et. al.*, | * |
| Defendants. | * |

## MEMORANDUM AND ORDER

BURROUGHS, D.J.

Plaintiff Jean Shea Budrow ("Budrow") brings the instant action against PNC Bank, National Association ("PNC"),[1] Assurant, Inc., and American Security Insurance Company ("the Assurant Defendants," together with PNC, "Defendants") for claims arising out of the formation and servicing of a mortgage on her residential property.

Currently pending before the Court are Defendants' motions to dismiss, [ECF Nos. 18 (Assurant Defendants), 39 (PNC)], Budrow's motion to file a second amended complaint, [ECF No. 72], and PNC's motion for sanctions, [ECF No. 81]. For the following reasons, the motions to dismiss are GRANTED, and the motions to amend and for sanctions are both DENIED.

---

[1] Budrow improperly names as Defendants "PNC Mortgage" and "National City Mortgage Co." and asserts that they are divisions of PNC Bank, National Association and National City Bank of Indiana. Neither PNC Mortgage nor National City Mortgage Co. currently exist. National City Mortgage Co. was a predecessor of entities that eventually merged into PNC. For the purposes of this Order, these parties will be referred to as PNC. [ECF No. 69 at 1, n.1–2].

I.       BACKGROUND

     A.       Factual Background

The following facts are taken primarily from the amended complaint, [ECF No. 10 ("Am. Compl.")], which stands at a whopping 444 paragraphs and 125 pages. Nevertheless, the Court, as it must, assumes its factual allegations to be true when considering a motion to dismiss. Ruivo v. Wells Fargo Bank, N.A., 766 F.3d 87, 90 (1st Cir. 2014). As it may on a motion to dismiss, the Court has also considered "documents incorporated by reference in [the complaint], matters of public record, and other matters susceptible to judicial notice." Giragosian v. Ryan, 547 F.3d 59, 65 (1st Cir. 2008) (alteration in original) (quoting In re Colonial Mortg. Bankers Corp., 324 F.3d 12, 20 (1st Cir. 2003)).

On May 25, 2006, Budrow secured a mortgage loan serviced by PNC ("Mortgage") to purchase property at 255 Jefferson Avenue, Salem, Massachusetts, 01970 (the "Property"). [Am. Compl. ¶¶ 25–26 ]. In short, Budrow disputes assorted fees charged relating to taxes and insurance on her Mortgage since its origination in 2006 until 2015. She accuses PNC of various sorts of misconduct associated with the documents related to the Mortgage, including establishing an illegal escrow account to collect unlawful real estate taxes and making misstatements and omissions in closing documents, which resulted in her being overcharged for property taxes. [Id. ¶¶ 27–28]; see generally [id. ¶¶ 37–157].

But the gravamen of Budrow's complaint is an alleged scheme between PNC and the Assurant Defendants to unlawfully attach lender-placed insurance ("LPI") to the Property. [Am. Compl. ¶¶ 16–23]. The Mortgage provided that, if Budrow failed to maintain insurance on the Property, PNC could place LPI to keep the Property insured. [Id. ¶ 45]. This LPI was placed on the Property from 2009 to June 2015. [Id. ¶¶ 118, 141, 432]. The Assurant Defendants provided

the LPI to PNC. [Id. ¶¶ 16–23, 173, 197]. Budrow alleges that the Assurant Defendants paid kickbacks for the exclusive right to monitor PNC's mortgage loan portfolio and place LPI. [Id. ¶ 17]. According to Budrow, Defendants schemed to "artificially inflate premiums" and used "kickbacks disguised as 'commissions' or . . . provide[d] the lender or servicer with lucrative reinsurance arrangements [and] include[d] unmerited charges" and then stuck the borrower with the bill for those inflated premiums. [Id. ¶ 16; see also id. ¶¶ 224–28]. She contends that beyond the premiums being inflated, they were often duplicative because they covered periods for which she did have insurance on the Property and the LPI was not needed. [Id. ¶ 229].

Budrow also alleges that these fraudulent charges resulted in negative reports to credit reporting agencies, which kept her from being able to refinance at a lower interest rate. She tried to refinance the Mortgage with PNC at least three times without success, including in December 2007, November 2010, and April 2013, [Am. Compl. ¶¶ 70–71, 95, 108], before finally refinancing in July 2015, [id. ¶ 101]. Budrow claims that PNC's failure to modify or allow her to refinance her Mortgage to secure a lower interest rate caused her substantial financial damage. [Id. ¶ 127]. During this time, PNC initiated three separate foreclosure actions against Budrow—at the end of 2009, in May 2010, and in November 2011—which Budrow alleges were all unlawful. [Id. ¶¶ 59–60, 78–100].

Finally, Budrow contends that PNC failed to respond to two "Qualified Written Requests" she sent—the first in March 2014 and the second in May 2020. [Am. Compl. ¶¶ 133–55]. Both letters requested information about the LPI placed on the Property. [Id.].

B. **Procedural Background**

Budrow, a licensed Massachusetts attorney, initially filed suit in Suffolk County Superior Court on December 14, 2020. [ECF No. 1-1]. Defendants removed the action to this Court on

January 22, 2021. [ECF No. 1]. After denying Budrow's remand request, [ECF No. 7], the Court allowed Budrow to file an amended complaint that named as Defendants PNC, the Assurant Defendants, and Henry Rappa and Rappa Law Attorneys at Law.[2] [Am. Compl. ¶¶ 13–14]. The amended complaint asserts 28 counts against Defendants under a litany of federal and state laws. [Id. ¶¶ 158–444].

PNC and the Assurant Defendants both separately moved to dismiss all claims asserted against them. [ECF Nos. 18 (Assurant Defendants), 39 (PNC)]. Budrow has opposed both motions, [ECF Nos. 37, 38, 45, 48], and PNC has replied to her opposition, [ECF No. 69]. The Court has already denied Budrow's attempt to file a second amended complaint, [ECF Nos. 46, 60], and her subsequent motion to reconsider that Order, [ECF Nos. 61, 64]. Nevertheless, on April 29, 2022, with the motions to dismiss pending, she moved to amend her complaint yet again. [ECF No. 72]. Oppositions, [ECF Nos. 74, 76], replies, [ECF Nos. 80, 84], and a sur-reply, [ECF No. 88], to the motion to amend have all been filed.

To conclude this procedural cacophony, PNC moved for Rule 11 sanctions on May 31, 2022, [ECF No. 81], which Budrow opposes, [ECF No. 91].

## II.    LEGAL STANDARD

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all well-pleaded facts, analyze those facts in the light most favorable to the plaintiff, and draw all reasonable factual inferences in the plaintiff's favor. See Gilbert v. City of Chicopee, 915 F.3d 74, 76, 80 (1st Cir. 2019). "[D]etailed factual allegations" are not

---

[2] Rappa prepared the closing documents for the Mortgage. On April 29, 2022, Budrow voluntarily dismissed Rappa and Rappa Law Attorneys at Law as defendants. [ECF No. 71]. Accordingly, Counts II, V, IX, and any other claims asserted against Rappa and Rappa Law Attorneys at Law, have been dismissed.

required, but the complaint must set forth "more than labels and conclusions." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The alleged facts must be sufficient to "state a claim to relief that is plausible on its face." Id. at 570.

"To cross the plausibility threshold a claim does not need to be probable, but it must give rise to more than a mere possibility of liability." Grajales v. P.R. Ports Auth., 682 F.3d 40, 44–45 (1st Cir. 2012) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "A determination of plausibility is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Id. at 44 (quoting Iqbal, 556 U.S. at 679). "[T]he complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." Hernandez-Cuevas v. Taylor, 723 F.3d 91, 103 (1st Cir. 2013) (quoting Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 14 (1st Cir. 2011)). "The plausibility standard invites a two-step pavane." A.G. ex rel. Maddox v. Elsevier, Inc., 732 F.3d 77, 80 (1st Cir. 2013) (citing Grajales, 682 F.3d at 45). First, the Court "must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." Id. (quoting Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012)). Second, the Court "must determine whether the remaining factual content allows a 'reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Morales-Cruz, 676 F.3d at 224 (internal quotation marks omitted)).

## III.   DISCUSSION

Defendants have moved to dismiss the claims asserting that (1) many of them are barred by an existing class settlement and the doctrine of *res judicata*; (2) all but one of the claims are time-barred; (3) a number of the provisions cited do not provide private causes of action; and (4) the claims fail on their merits. The Assurant Defendants also argue that they were not properly

served. In any event, the Court need not reach the merits of Budrow's claims because, as discussed in detail below, her claims are time-barred and/or fail to clear other preliminary hurdles.

### A. Statutes of Limitations

The events underlying all of Budrow's claims are the closing of her Mortgage, on May 25, 2006, or the servicing of the Mortgage from 2006 until the 2015 refinancing (this includes the LPI placement from 2009 to 2015). She filed her complaint on December 21, 2020, over 14 years after the closing of the Mortgage and over 5 years since she refinanced in 2015. As a result, as discussed in detail below, all but one of her claims are time-barred by the applicable statutes of limitations.

"To prevail on a statute of limitations defense at the motion to dismiss stage, 'the facts establishing that defense must: (1) be definitively ascertainable from the complaint and other allowable sources of information and (2) suffice to establish the affirmative defense with certitude.'" Nat'l Ass'n of Gov't Emps. v. Mulligan, 854 F. Supp. 2d 126, 131 (D. Mass. 2012) (quoting Gray v. Evercore Restructuring L.L.C., 544 F.3d 320, 324 (1st Cir. 2008)).

#### i. Counts I, III – Mass. Gen. Laws. ch. 93A, §§ 2, 9 and ch. 176D

The statute of limitations to bring a claim under both Mass. Gen. Laws ch. 93A and ch. 176D is four years. Mass. Gen. Laws ch. 260, § 5A; see also Latson v. Plaza Home Mortg., Inc., 708 F.3d 324, 326 (1st Cir. 2013); Schwartz v. Travelers Indem. Co., 740 N.E.2d 1039, 1043 (Mass. App. Ct. 2001). As discussed above, the events underlying these claims terminated in 2006, or 2015 at the latest. Because her complaint was not filed until 2020, after the statute of limitations had already expired, these claims are time-barred.

        ii.        <u>Counts IV, VI, VII, VIII, XV, XVI – Common Law Claims</u>

All of Budrow's common law claims against Defendants are also time-barred. "Generally speaking, the limitations period in Massachusetts is three years for tort claims . . . and six years for contract claims . . . ." <u>RTR Techs., Inc. v. Helming</u>, 707 F.3d 84, 89 (1st Cir. 2013) (citations omitted). "Causes of action in contract and tort generally accrue at the time of breach or injury." <u>Arcieri v. N.Y. Life Ins. Co.</u>, 63 F. Supp. 3d 159, 164 (D. Mass. 2014); <u>JLI Inv. S.A. v. Computershare Tr. Co., N.A.</u>, No. 15-cv-11474, 2017 WL 354008, at *5 (D. Mass. 2017). Because the cause of injury underlying the breach of contract claims and contract-related unjust enrichment claims occurred at the closing of the Mortgage in 2006, Mass. Gen. Laws. ch. 260, § 2's six-year statute of limitations for contract claims expired before the filing of the complaint.[3]

Her tort-based claims—emotional distress, fraud, and tortious interference with a business relationship—are all subject to Mass. Gen. Laws ch. 260, § 2A's three-year statute of limitations, which, even if they accrued at the last possible date in 2015, also expired prior to the filing of the complaint. <u>Quinn v. Walsh</u>, 732 N.E.2d 330, 332 (Mass. App. Ct. 2000); <u>Petricca v. Simpson</u>, No. 93-cv-40171, 862 F. Supp. 13, at *16 (D. Mass. 1994); <u>Prescott v. Morton Int'l, Inc.</u>, 769 F. Supp. 404, 406 (D. Mass. 1990).

---

[3] Budrow's argument that the twenty-year statute of limitation for sealed contracts under Mass. Gen. Laws. ch. 260, § 1 should apply, <u>see</u> [ECF No. 48 at 21], is unavailing. For all actions after 1998, the statute of limitations for enforcement of negotiable instruments is six years. Mass. Gen. Laws. ch. 106, § 3-118; <u>see</u> <u>Wells Fargo Bank, Nat'l Ass'n v. Khursheed</u>, No. 18-cv-91NO, 2019 WL 1989189, at *3 (Mass. App. Div. 2019); <u>Premier Cap., LLC v. KMZ, Inc.</u>, 984 N.E.2d 286, 288 (Mass. 2013).

        iii.        Count XVII and XVIII – Racketeer Influenced and Corrupt Organizations Act ("RICO") and RICO Conspiracy

Budrow also brings two RICO claims against Defendants for their alleged scheme to place LPI on her Property from 2009 to 2015. However, "[t]he civil RICO statute . . . has a four-year statute of limitations." Álvarez-Maurás v. Banco Popular of P.R., 919 F.3d 617, 622 (1st Cir. 2019) (citing Agency Holding Corp. v. Malley-Duff & Assocs., Inc., 483 U.S. 143, 156 (1987)). Accordingly, because she had until approximately 2019 to file these claims, but did not file her complaint until December 2020, the RICO claims are time-barred.

        iv.        Counts XI, XII, XIII, XIV – RESPA, TILA, and Other Related Claims

Budrow asserts a panoply of overlapping claims under these counts, all arising from the closing and servicing of the Mortgage.

To begin, there are no private rights of actions under Mass. Gen. Laws ch. 167, §§ 1–21 and Mass. Gen. Laws ch. 175, § 2B. See Arcieri, 63 F. Supp. 3d at 163; Slowey v. Flagstar Mortg. Corp., No. 10-cv-11891, 2011 WL 1118470, at *2 (D. Mass. 2011). There are also no private rights of actions under 209 CMR 40.00, 209 CMR 18.01, and 940 CMR 8.06. Ishaq v. Wachovia Mortg., FSB, No. 09-cv-11422, 2010 WL 1380386, at *4 (D. Mass. 2010); Cranmore v. Wells Fargo Bank, N.A., No. 12-cv-10243, 2013 WL 1195275, at *5 n.3 (D. Mass. 2013).

Next, most of the remaining claims brought under these counts are time-barred by the relevant statutes of limitations. First, Mass. Gen. Laws ch. 183C provides that borrowers have five years from the date of the closing of the mortgage to bring an action. See Da Silva v. U.S. Bank, N.A., 885 F. Supp. 2d 500, 504 (D. Mass. 2012). Second, the statute of limitations to bring a claim under Truth in Lending Act ("TILA") is "one year from the date of the occurrence of the violation" for damages actions. 15 U.S.C. § 1640(e); Calvin Lai Chan v. Saxon Mortg. Serv., Inc., No. 09-cv-11265, 2010 WL 11580042, at *7 (D. Mass. 2010); Belini v. Wash. Mut.

8

Bank, FA, 412 F.3d 17, 26 (1st Cir. 2005). Third, the statute of limitations for claims under the Real Estate Settlement Procedures Act ("RESPA") is one or three years from the date of the violation, depending on the section violated.[4] 12 U.S.C. § 2614; Da Silva, 885 F. Supp. 2d at 504–05; Francisque v. Wells Fargo Bank, N.A., No. 11-cv-10841, 2012 WL 860212, at *3 (D. Mass. 2012). While it is not entirely clear from the complaint which section of RESPA Budrow is suing under, her claims would not be timely under either statute of limitations.[5]

Finally, Count XII asserts that PNC's responses to Budrow's 2014 and 2020 Qualified Written Requests violated RESPA. Though it is not clear that either letter constituted a Qualified Written Request as defined by RESPA, see O'Connor v. Nantucket Bank, 992 F. Supp. 2d 24, 35 (D. Mass. 2014), the Court need not make such a determination at this stage because Budrow's claims fail on other grounds. The 2014 letter is time-barred like the rest of her RESPA claims because RESPA carries a one- or three-year statute of limitations and her complaint was not filed until 2020. Next, though Budrow's claim about the 2020 letter is the only allegation in her complaint that is not barred by a statute of limitations, it is still untimely. Pursuant to 12 C.F.R. § 1024.35(g)(1)(iii), a servicer is not required to respond to a Qualified Written Request if the servicer reasonably determines that the notice is delivered more than a year after a mortgage is discharged. See 12 C.F.R. § 1024.35(g)(1)(iii). As the Mortgage was refinanced and discharged in 2015, and the 2020 Letter was delivered to PNC several years thereafter, PNC was not

---

[4] 12 U.S.C. § 2614 ("Any action pursuant to the provisions of section 2605, 2607, or 2608 of this title may be brought in the United States district court . . . within 3 years in the case of a violation of section 2605 of this title and 1 year in the case of a violation of section 2607 or 2608 of this title from the date of the occurrence of the violation . . . .").

[5] Budrow also purports to bring another 93A claim under these counts, but pursuant to the statute of limitations explained in Section III.A.i, this claim is also time-barred.

required under RESPA to respond to the 2020 Letter.  See [ECF No. 40 at 13; ECF No. 68 at 2 n.3].

    v.   Discovery Rule

Budrow argues that the discovery rule tolls the statute of limitations for each of her claims because Defendants actively concealed their unlawful activity, thus preventing her from recognizing her claims and filing her complaint, but this contention is unsupported by the factual allegations.  [ECF No. 38 at 23, 25–26; ECF No. 48 at 22–25].

In Massachusetts, the discovery rule "delays accrual beyond the time of injury if the plaintiff does not know and could not reasonably know that he or she may have been harmed by the conduct of another." Maldonado v. AMS Servicing LLC, No. 11-cv-40044S, 2012 WL 220249, at *5 (D. Mass. 2012) (quoting Prescott v. Morton Intern., Inc., 769 F. Supp. 404, 408 (D. Mass. 1990) (internal quotation marks omitted)).  The exception, however, is narrow, as it applies only to harms that are "inherently unknowable." Id. (quoting Saenger Org., Inc. v. Nationwide Ins. Licensing Assoc., Inc., 119 F.3d 55, 65 (1st Cir. 1997)).  "The factual basis for a cause of action is inherently unknowable if it is incapable of detection by the wronged party through the exercise of reasonable diligence." Gonzalez v. United States, 284 F.3d 281, 288–89 (1st Cir. 2002) (quoting Geo. Knight & Co. v. Watson Wyatt & Co., 170 F.3d 210, 213 (1st Cir. 1999) (internal quotation marks omitted)).  But "[t]he discovery rule does not require that a plaintiff know the specific details pertaining to an alleged harm, . . . instead it imposes a 'duty to investigate' on a plaintiff who has cause for concern." Epstein v. C.R. Bard, Inc., 460 F.3d 183, 188 (1st Cir. 2006) (quoting Doucette v. Handy & Harmon, 625 N.E.2d 571, 573 (Mass. App. Ct. 1994).

Here, Budrow fails to allege any facts suggesting that the alleged misconduct was "inherently unknowable," nor does she point to any affirmative acts of concealment. In fact, even Budrow's complaint is replete with admissions that she has known about the purported misconduct for the entire time period underlying the facts and made ample, documented grievances about the conduct long before she filed the instant action. See, e.g., [Am. Compl. ¶¶ 84–85, 97–100, 103–04, 111–18, 128, 134, 136–37, 140–43, 367–68, 372–77, 379–80, 389, 394–96, 422–26, 429–33; ECF No. 69-1 (Budrow's answer and counterclaim filed on December 21, 2012 in PNC's foreclosure suit against her, which repeats the allegations underlying the complaint); see also [ECF No. 81-1 (May 2010 letter from Budrow to the Massachusetts Attorney General); ECF No. 81-2 (December 2012 letter from Budrow to PNC); ECF No. 81-4 (April 2013 letter from Budrow to PNC)].

The allegations do not show that actions taken by Defendants deprived Budrow of the knowledge of facts material to her claims; instead they show that Budrow has been abundantly aware of her claims and actively pursuing them in some form or another for over a decade. Accordingly, there can be no tolling of the applicable statutes of limitations.

Though the Court need not proceed further, in the interest of a fulsome record, it will address the related class settlement release and the doctrine of *res judicata*.

### B.    Settlement Release and *Res Judicata*

Budrow's LPI-related claims are also barred because she is a member of a settlement class that resolved and released all LPI-related claims against these Defendants—Montoya v. PNC Bank, No. 14-cv-20474, 2016 WL 1529902 (S.D. Fla. Apr. 13, 2016). See [ECF No. 19 at 8–16; ECF No. 40 at 21–22; ECF No. 69 at 6–7].

11

i. The Montoya Settlement

The plaintiff in Montoya brought analogous claims against these same Defendants, alleging that they had conspired to charge PNC borrowers inflated and impermissible amounts for LPI in violation of borrowers' mortgage agreements, PNC's fiduciary duties to its borrowers, TILA, the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), and the federal RICO statute. 2016 WL 1529902, at *4. The Montoya plaintiff also brought a claim for tortious interference with a business relationship against the Assurant Defendants, and claims for unjust enrichment against both PNC and the Assurant Defendants. Id.

The settlement was preliminarily approved in September 2015 and finally approved in 2016. Montoya, 2016 WL 1529902, at *4. It compensated PNC borrowers for 12.5% of the amount that PNC had charged them for force-placed insurance coverage, regardless of whether they had paid or were simply charged the invoiced amounts.[6] Id. at *5.

The Montoya "Settlement Class" was composed of:

> All borrowers in the United States who, within the Settlement Class Period . . . were charged by PNC under a hazard, flood, flood gap or wind-only LPI Policy for Residential property, and who, within the Settlement Class Period, either (i) paid to PNC the Net Premium for that LPI Policy or (ii) did not pay to and still owe PNC the Net Premium for that LPI Policy.

Montoya, 2016 WL 1529902, at *6. The "Settlement Class Period" was defined as January 1, 2008, up to and including September 30, 2015. Id. at *7. The "Released Persons" included Defendants, among others. Id. at *27. It also provided that all Settlement Class Members were

> deemed to have fully, conclusively, irrevocably, forever, and finally released, relinquished, and discharged the Released Persons from any and all claims, actions,

---

[6] The Montoya court observed that there have been over a dozen nationwide LPI class actions, most of which have reached settlement, offering more than $3.5 billion in relief to millions of homeowners, that there has been negligible opposition to these settlements, and that the 12.5% recovery is close to "near-complete relief" and "very likely [to] exceed[] what [p]laintiffs could have won at trial." 2016 WL 1529902, at *3, *11 (citation omitted).

12

causes of action, suits, debts, sums of money, payments, obligations, reckonings, promises, damages, penalties, attorney's fees and costs, liens, judgments, and demands of any kind whatsoever that each Settlement Class Member may have until the close of the Settlement Class Period or may have had in the past, whether in arbitration, administrative, or judicial proceedings, whether as individual claims or as claims asserted on a class basis, whether past or present, mature or not yet mature, known or unknown, suspected or unsuspected, whether based on federal, state, or local law, statute, ordinance, regulations, contract, common law, or any other source, that were or could have been sought or alleged in the Litigation or that relate, concern, arise from, or pertain in any way to the Released Persons' conduct, policies, or practices concerning LPI Policies placed or charged during the Settlement Class Period.

(i) The Release stated in Paragraph 73(b) above shall include, but not be limited to, all claims related to any LPI placement regardless of whether the LPI Policy was entirely or partially canceled; all claims related to PNC's insurance requirements; the relationship, whether contractual or otherwise, between the PNC Defendants and the Assurant Defendants regarding LPI, including, but not limited to, the procuring, underwriting, placement, insurance tracking, or costs of LPI Policies; the coverage amount, duration, issue date, alleged "backdating," or alleged excessiveness of any LPI Policies placed or charged by PNC; the payment or receipt of commissions, income or benefits relating to reinsurance agreements, expense reimbursements, alleged "kickbacks," or any other compensation under any LPI Policies placed or charged by PNC; any alleged "tying" arrangement involving PNC and LPI; any alleged breach of contract, breach of an implied covenant of good faith and fair dealing, breach of fiduciary duty, unjust enrichment, or any other alleged breach of any common law duty or obligation or any alleged violation of any federal or state statute or regulation, by PNC concerning LPI Policies; any alleged tortious interference by the Assurant Defendants with mortgage loans serviced by PNC; the disclosure or non-disclosure of any payment, expenses, fees, charges, or features pertaining to or under any LPI Policies or coverage under such LPI Policies and charges for such coverage placed or charged by PNC; the receipt or non-disclosure of any benefit under any LPI Policies or coverage under such LPI Policies and charges for such coverage placed or charged by PNC; the content, manner, or accuracy of any communications regarding the placement of any LPI Policies by PNC; and to the regulatory approval or non-approval of any LPI Policy, or the premium thereon, placed or charged by PNC.

Id. at *28.

The Montoya court also made the following findings regarding notice to class members:

(a) The Court finds that the distribution of the Mail Notice, the creation of the IVR toll-free telephone number system, and creation of the Internet site, all as provided for in the Settlement Agreement and Preliminary Approval Order (i) constituted the best practicable notice under the circumstances to Settlement Class Members; (ii)

13

> constituted notice that was reasonably calculated to apprise Settlement Class Members of the pendency of the Action, their right to object or to exclude themselves from the proposed Settlement, and their right to appear at the Final Approval Hearing; (iii) was reasonable and constituted due, adequate, and sufficient notice to all persons entitled to be provided with notice; and (iv) complied fully with the requirements of Fed. R. Civ. P. 23, the United States Constitution, the Rules of this Court, and any other applicable law. The Parties have complied with their notice obligations under the Class Action Fairness Act, 28 U.S.C. § 1715, in connection with the proposed settlement.
>
> (b) The Court finds that the Class Notice and methodology set forth in the Settlement Agreement, the Preliminary Approval Order, and Final Order (i) constitute the most effective and practicable notice of the Final Order, the relief available to Settlement Class Members pursuant to the Final Order, and applicable time periods; (ii) constitute due, adequate, and sufficient notice for all other purposes to all Settlement Class Members; and (iii) comply fully with the requirements of Fed. R. Civ. P. 23, the United States Constitution, the Rules of this Court, and any other applicable law.

Id. at *7.  The administrator also created a settlement website and arranged for the publication of an Internet banner advertisement and a summary notice in USA Today that ran in December 2015.  [ECF No. 19 at 10; ECF No. 19-2 (copies of banner advertisement and summary notice)].  That court noted that the parties "prepared notices and claim forms that were mailed to 130,875 PNC borrowers."  Montoya, 2016 WL 1529902, at *18; [ECF No. 19-3 ¶ 5].  Only 21 settlement class members opted to exclude themselves from the class.  Montoya, 2016 WL 1529902, at *15; [ECF No. 19-3 ¶ 9, at 6–7].  Budrow was not among the opt-outs.  [ECF No. 19 at 11; ECF No. 19-3 at 6–7].

Finally, the Montoya court then "permanently barred and enjoined" settlement class members "from directly or indirectly . . . filing, commencing, prosecuting, intervening in, or participating in . . . any lawsuit in any jurisdiction based on or relating to the claims and causes of action, or the facts and circumstances relating thereto, in this action and/or the Released Claims[,]" Montoya, 2016 WL 1529902, at *30, and stated that the judgment and settlement agreement may be filed in any action to "support a defense of *res judicata*, collateral estoppel,

release, good faith settlement, judgment bar or reduction, or any theory of claim preclusion or issue preclusion or similar defense or counterclaim[,]" id. at *31.

    ii.  Budrow's LPI Claims are Barred by the Montoya Settlement

"It is beyond cavil that a suit can be barred by the earlier settlement of another suit in either of two ways: *res judicata* or release." Reppert v. Marvin Lumber and Cedar Co., Inc., 359 F.3d 53, 56 (1st Cir. 2004) (quoting Nottingham Partners v. Trans–Lux Corp., 925 F.2d 29, 31–32 (1st Cir. 1991)).  To succeed with a release argument, Defendants must show that: (1) the release applied to Budrow; (2) it encompassed the claims interposed in the present lawsuit; and (3) the release "was legally enforceable." Dolan v. Chase Home Fin., LLC, No. 12-cv-11662, 2015 WL 4776786, at *8 (D. Mass. 2015) (citations omitted), report and recommendation adopted, No. 12-cv-11662, 2015 WL 4762672 (D. Mass. 2015).

Despite Budrow's contentions to the contrary, Defendants have easily met these elements.  First, it is undeniable that Budrow was a member of the Montoya class.  The settlement's terms and definitions all apply to her and the instant claims.  Budrow asserts that she was never a Montoya class member because she was "never served notice of a summons to be a Montoya Class Member; never received a notice under Due Process; and never read about Montoya on the Internet or in USA Today." [ECF No. 48 at 38–39]; see also [ECF No. 38 at 15].  She further contends that the Montoya settlement cannot encompass her or her claims because it was filed in Florida and she resides in Massachusetts, and that the Property is in Massachusetts.  [ECF No. 48 at 38].  These contentions all fail.

It is well-established that "a court-approved settlement containing a release may be applied against a class member who is not a representative member, even if that member objects to the settlement, so long as acceptable procedural safeguards have been employed."

15

Nottingham Partners, 925 F.2d at 33.  Indeed, the First Circuit has explained that "[i]ndividual notice of class proceedings is not meant to guarantee that every member entitled to individual notice receives such notice," but "it is the court's duty to ensure that the notice ordered is reasonably calculated to reach the absent class members."  Reppert, 359 F.3d at 56 (citation omitted).  "After such appropriate notice is given, if the absent class members fail to opt out of the class action, such members will be bound by the court's actions, including settlement and judgment, even though those individuals never actually receive notice."  Id. at 56–57.

That is exactly what happened here.  The Montoya court expressly held that the class notice—by mail, toll-free telephone line, website, and nationwide newspaper distribution—was reasonably calculated to reach all absent class members.  Such notice procedures comport with due process requirements even when not all class members receive actual notice.

The second and third prongs are also easily met.  The instant case and the Montoya case share the same "common gravamen" regarding Defendants' placement of LPI, Dolan, 2015 WL 4776786, at *10, and the language of the Montoya release was broad enough to encompass all of Budrow's claims (in fact, the complaint quotes from Montoya at length).  With respect to the third and final prong, the release is legally enforceable and was not the product of fraud or duress.  See Davignon v. Clemmey, 322 F.3d 1, 17 (1st Cir. 2003).

   iii.   *Res Judicata*

Alternatively, or additionally, the doctrine of *res judicata* would also bar Budrow's LPI-related claims because the claims were litigated and adjudicated in Montoya.  [ECF No. 19 at 15–16].[7]  "Dismissal under *res judicata*, however, can only occur where the facts that establish

---

[7] "*Res judicata* is an affirmative defense, but where, as here, the defendant[s] ha[ve] raised the question on motion to dismiss, the plaintiff does not object to the procedure, and the court

the defense are conclusive and definitively ascertainable from 1) the allegations of the complaint, 2) the documents (if any) incorporated therein, 3) matters of public record and 4) other matters of which the court may take judicial notice." United States v. Raytheon Co., 334 F. Supp. 3d 519, 523 (D. Mass 2018) (citing Colonial Mortg. Bankers, 324 F.3d at 16).

"*Res judicata*" is a broad term, encompassing both claim and issue preclusion. Taylor v. Sturgell, 553 U.S. 880, 892 (2008). "*Res judicata*, in its claim preclusion aspect, is intended to prevent the re-litigation of claims already litigated or that should have been litigated in an earlier action." Iantosca v. Step Plan Servs., Inc., 604 F.3d 24, 30 (1st Cir. 2010). Under Massachusetts law, "[t]here are three required elements for the invocation of claim preclusion: (1) the identity or privity of the parties to the present and prior actions, (2) identity of the cause of action, and (3) prior final judgment on the merits." Baby Furniture Warehouse Store, Inc. v. Meubles D & F Ltée, 911 N.E.2d 800, 806 (Mass. App. Ct. 2009) (quoting Kobrin v. Bd. of Registration in Med., 832 N.E.2d 628, 634 (Mass. 2005) (internal quotation marks omitted)).

For reasons already discussed, these elements are all met: (1) the Montoya judgment dismissed the action on its merits and with prejudice; (2) Budrow was a class settlement member; and (3) there is identity of claims. As such, any and all claims tied to the LPI on the Mortgage are barred by the Montoya settlement.

Because all of Budrow's claims are time-barred, barred by Montoya, or fail on other preliminary grounds, the Court need not reach their merits.

---

discerns no prejudice, the issue may be resolved on such a motion." In re Sonus Networks, Inc., S'holder Derivative Litig., 499 F.3d 47, 56 (1st Cir. 2007) (internal citation omitted).

## IV. MOTION TO AMEND

Though Budrow seeks to file a second amended complaint, [ECF No. 72], the motion is denied because any such amendment would be futile. A Court may deny leave to amend for reasons including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." Foman v. Davis, 371 U.S. 178, 182 (1962). If the proposed amendment would be futile because the amended complaint still fails to state a claim, a district court acts within its discretion in denying the motion for leave to amend. Abraham v. Woods Hole Oceanographic Inst., 553 F.3d 114, 117 (1st Cir. 2009). None of Budrow's proposed amendments—which include a new contract claim and a new Fair Debt Collection Practices Act ("FDCPA") claim—overcome the legal deficiencies addressed in this order.[8] See [ECF No. 72-1].

## V. MOTION FOR SANCTIONS

Finally, PNC has also moved for sanctions under Rule 11 and requests an award of attorney's fees, costs, and expenses. [ECF No. 81]. PNC insists that Budrow, an attorney herself, knew her claims were frivolous when she filed the complaint and nonetheless pursued them to continue her "vexatious campaign of bad faith claims against PNC" which began around 15 years ago. [ECF No. 81 at 2–3, 5–6]. Budrow vehemently denies the accusations. [ECF No. 91].

---

[8] It is worth noting that the FDCPA carries a one-year statute of limitations which begins to accrue from the date of the alleged violation, Rotkiske v. Klemm, 140 S. Ct. 355, 358 (2019), and that PNC is likely not a "debt collector" as defined by the statute as it is attempting to collect its own debt from Budrow and is not likely to qualify as regularly collecting or attempting to collect "… debts owed or due … another" as required by the statute. 15 U.S.C. § 1692a(6); see Dorrian v. LVNV Funding, LLC, 94 N.E.3d 370, 372 (Mass. 2018).

"Rule 11 is designed to deter parties from pursuing unwarranted or frivolous claims or defenses. . . . However, 'the imposition of sanctions is discretionary rather than mandatory.'" Caffeinate Labs, Inc. v. Vante Inc., No. 16-cv-12480, 2017 WL 2889031, at *1 (D. Mass. 2017) (citations omitted).

This lawsuit is at least frivolous, possibly vexatious, and Budrow's filings in this matter have no doubt been excessive and dilatory and have consumed a good deal of Defendant and Court resources. It would be reasonable for the Court to conclude that sanctions were warranted. Nevertheless, while the Court is sympathetic to PNC, it is reluctant to sanction a plaintiff who has taken on the challenging task of representing herself, even as an attorney. Budrow is warned, however, that any future filing of frivolous or vexatious cases in this Court will result in the imposition of sanctions, including an order enjoining her from filing further proceedings in this Court arising from the same nucleus of operative facts.

## VI.   CONCLUSION

Accordingly, Defendants' motions to dismiss, [ECF Nos. 18, 39], are GRANTED, Budrow's motion to file a second amended complaint, [ECF No. 72], and PNC's motion for sanctions, [ECF No. 81], are DENIED.

**SO ORDERED.**

October 26, 2022                                                  /s/ Allison D. Burroughs
                                                                            ALLISON D. BURROUGHS
                                                                            U.S. DISTRICT JUDGE